IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00021-SOM-03 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING WITHOUT |
| | ) | PREJUDICE DEFENDANT LEVI |
| | ) | SAELUA'S MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| vs. | ) | |
| | ) | |
| LEVI SAELUA, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT LEVI SAELUA'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2013, following a guilty plea, Defendant Levi Saelua, Jr., was sentenced to 300 months of incarceration, ten years of supervised release, and a $100 special assessment for having conspired to distribute and to possess with intent to distribute 50 grams or more of methamphetamine and a quantity of marijuana.  *See* Judgment, ECF No. 223.  In the Memorandum of Plea Agreement, Saelua and the Government stipulated to recommending a sentence of 300 months of imprisonment under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  *See* ECF No. 181, PageID # 476.  The Government agreed not to file an Amended Special Information asserting that Saelua had more than one prior felony drug offense pursuant to 21 U.S.C. § 851, which would have increased the mandatory minimum to 20 years of imprisonment and

raised the statutory maximum sentence to life in prison. *See id.*, PageID #s 477-78.

Given good time credit, Saelua, who is 57 years old, has a projected release date of July 20, 2034. *See* https://www.bop.gov/inmateloc/ (input BOP Register Number 87469-022) (last visited June 1, 2021). Saelua has been in custody since his arrest on January 20, 2013, meaning that he has served approximately 8 1/3 years of his 25-year sentence. *See* ECF No. 404, PageID # 1954; ECF No. 19 (indicating that Saelua was in custody at his initial appearance on January 10, 2013); *see also* ECF No. 41 (Return on Warrant for Arrest indicating that Saelua was arrested on January 10, 2013).

Saelua is incarcerated at Atwater USP in California. *See* https://www.bop.gov/inmateloc/ (input BOP Register Number 87469-022) (last visited June 1, 2021). Atwater USP currently houses 948 inmates, with 859 at the USP and 89 in an adjacent camp. https://www.bop.gov/locations/institutions/atw/ (last visited June 1, 2021). As of the morning of June 1, 2021, Atwater USP has no active COVID-19 case in its inmate population and 2 active COVID-19 cases in its staff, with 363 inmates and 63 staff members having recovered from it. https://www.bop.gov/coronavirus/ (June 1, 2021). Additionally, as of the morning of June 1, 2021, 390 inmates and 152 staff members at Atwater USP have been fully vaccinated against COVID-

19. *Id.* Saelua appears to be one of those fully vaccinated inmates. In his Supplemental Memorandum in support of his motion, he states, "Saelua's medical records also confirm that he has been vaccinated." ECF No. 400, PageID # 1877; *see also* Sealed Medical Records, ECF No. 403, PageID # 1943 (indicating he received doses of the Pfizer-BioNTech COVID-19 vaccine in January and February 2021).

Additionally, Saelua contracted COVID-19 in December 2020 and recovered without having experienced severe symptoms, although he indicates that he has since experienced chronic coughing, mucus in his chest, and shortness of breath. *See* ECF No. 403, PageID# 1941 (sealed medical records); ECF No. 766, PageID # 7394 (motion stating, "I tested positive for COVID-19 on December 14, 2020."); ECF No. 400, PageID # 1876 (calling his COVID-19 infection "asymptomatic," but saying he has since experienced respiratory issues).

Saelua moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The primary basis for his motion is the COVID-19 pandemic, although he also claims that his sentence would be shorter if he were sentenced under the current guidelines. Saelua claims that his BMI is between 34.4 and 36.6 and that he has "hypertension (but the BOP medical records do not reflect a hypertension diagnosis)." ECF No. 400, PageID # 1875. After considering Saelua's medical conditions, the time remaining on

his sentence, and his history, this court concludes that he has not demonstrated that extraordinary and compelling circumstances warrant a reduction in his sentence at this time.  Accordingly, his motion for compassionate release is denied.

**II.      ANALYSIS.**

Saelua's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence

reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion). *See United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Saelua Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

Saelua submitted an administrative compassionate release request to the warden of his prison, who denied that request on February 25, 2021. The Government therefore concedes that Saelua has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 404, PageID #s 1956-57.

### B. This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the

discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

Recently, the Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they

may inform this court's discretion.  *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

### C. Saelua Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release at This Time, or That the Requested Reduction Would Be Consistent with Any Applicable Sentencing Commission Policy Statement.

Saelua contends that this court should exercise its discretion and find that extraordinary and compelling circumstances justify his early release.  He relies primarily on the risks he faces if he contracts COVID-19 for a second time despite being fully vaccinated.  While the court acknowledges the seriousness of Saelua's concern, the COVID-19 pandemic does not justify early release at this time.

According to Saelua, he has a BMI between 34.4 and 36.6.  Under the CDC's guidance, a BMI between 34.4 and 36.6 "can make you more likely to get severely ill from COVID-19," meaning that Saelua may be more likely to need hospitalization, intensive care, a ventilator to help him breathe, or may even die from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 1, 2021). Saelua's age, 57, also appears to increase his risk of a severe case of COVID-19.  *Id.* ("Older adults are more likely to get severely ill from COVID-19.  More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths

7

occur in people older than 45."). Additionally, although not supported by the sealed medical records, Saelua says he has hypertension, which can also make it more likely for him to become severely ill from COVID-19. *See id.* While this court certainly agrees that Saelua has legitimate concerns about contracting COVID-19, his medical conditions, standing alone, are not exceptional and compelling reasons that warrant a reduction in sentence.

Several factors mitigate the risks that Saelua faces. First, in December 2020, Saelua tested positive for COVID-19. He says that he was asymptomatic, but that he has since had respiratory issues. Accordingly, it is not clear that he is likely to develop severe complications if reinfected.

Second, although it is possible, it is unlikely that Saelua will be infected a second time, especially given that he is fully vaccinated against COVID-19. The CDC has acknowledged that while "[c]ases of reinfection with COVID-19 have been reported, [they] remain rare." *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 1, 2021); *see also* https://www.cdc.gov/vaccines/covid-19/info-by-product/pfizer/pfizer-bioNTech-faqs.html ("Clinical trial data demonstrated vaccine efficacy was 95.0% against symptomatic, laboratory-confirmed COVID-19 in persons without evidence of previous SARS-CoV-2

infection following receipt of 2 doses of Pfizer-BioNTech COVID-19 Vaccine.") (last visited June 1, 2021). While this court is in no position to make a definitive determination about immunity, and while the court is aware of the cases cited by Saelua in his Reply for the proposition that this court may still exercise its discretion and release a defendant who has been vaccinated, the combination of Saelua's lack of complications after testing positive, the possibility of some form of immunity from his December 2020 infection, and his status as fully vaccinated against COVID-19 cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

Moreover, as of the morning of June 1, 2021, Atwater USP has no active cases of COVID-19 in its inmate population and only 2 active cases of COVID-19 among staff members (who are presumably staying home if actively infected). Atwater USP has had 363 inmates and 63 staff members recover from COVID-19. Those numbers demonstrate that Atwater USP at one time had a significant COVID-19 problem. Its COVID-19 problem has been reduced but certainly not eliminated. Nevertheless, the relatively low number of current COVID-19 cases does not place Saelua at great risk of exposure to COVID-19, especially when 390 of the 948 inmates (41.1%) at Atwater USP, including Saelua, have been fully vaccinated against COVID-19.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a), one of which is particularly relevant.  Saelua has been incarcerated for about 8 1/3 years.  That is only a third of his 25-year sentence.  Saelua does not establish that current conditions warrant cutting his sentence to 8 1/3 years as appropriate punishment for his crimes.

Given the breadth of his criminal history and history of violent conduct, this court is also concerned that Saelua may pose a danger to the community if released at this time.  *See* ECF No. 396, PageID # 1842 (Saelua concedes he was categorized as a Career Criminal); Presentence Investigation Report, ECF No. 224, PageID #s 620-22 (detailing convictions for: 1) promoting dangerous drugs in the third degree for which he was sentenced to 5 years of imprisonment; 2) robbery in the second degree for which he was sentenced to 10 years of imprisonment; 3) attempted robbery in the first degree using a .357 revolver for which he was sentenced to 20 years of imprisonment; 4) promoting a dangerous drug in the third degree for which he was sentenced to 5 years of imprisonment; and 5) using a telephone to facilitate the commission of a felony under the Controlled Substances Act for which he was sentenced to 27 months of imprisonment), PageID # 621 (indicating that he participated in the group assault of another inmate), and PageID # 623 (designating Saelua as a career

offender); ECF No. 221, PageID # 589 (Minutes of Sentencing Proceeding indicating that the court adopted the Presentence Investigation Report).

Saelua has had disciplinary issues while incarcerated. Particularly troubling is Saelua's assault of another inmate in 2007 and possession of a homemade weapon in 2019. *See* ECF No. 400-1, PageID #s 1886-87. Two of his disciplinary issues have no bearing on the present decision as they do not suggest any danger to the community if Saelua is released--Saelua doubled back for more food in 2019 and participated in a hunger strike in 2017. *Id.*; ECF No. 400, PageID 1874 (detailing circumstances of disciplinary issues).

It is true that Saelua has made numerous attempts to rehabilitate himself while imprisoned. *See* ECF No. 396, PageID #s 1859-60. Saelua says that he has even quit the USO gang. *See* ECF No. 400, PageID # 1873. Furthermore, the Bureau of Prisons trusts him enough to allow him to work in the commissary. *See* ECF No. 400, PageID # 1874. While the court commends Saelua for that conduct, on balance, it is not sufficient for this court to exercise its discretion and determine that compassionate release is appropriate at this time.

Saelua also argues that compassionate release is supported when all circumstances are considered, including a change in the law. He says that, if he were sentenced today he

11

would be facing a 15-year mandatory minimum rather than the 20-year mandatory minimum and maximum of life he faced at the time.  *See* ECF No. 400, PageID # 1879.  Even assuming that this court would have sentenced Saelua to a 15-year mandatory minimum sentence, rather than the 25 years imposed, Saelua would still have a substantial amount of time left to serve on his sentence.  Any potential sentencing disparity, when combined with his medical and personal history discussed above, would still not demonstrate extraordinary and compelling reasons justifying a reduction in Saelua's sentence at this time.

The court denies Saelua's present request without prejudice, noting that, among other things, he still would have considerable time left on his sentence even if he had been sentenced to the mandatory minimum of 15 years of imprisonment.  *See United States v. Gordon*, 2020 WL 2896910 at *3 (S.D. Ohio June 3, 2020) (denying compassionate release motion without prejudice when "defendant would still have a considerable amount of time left to serve on his sentence" under the new law); *United States v. Brown*, 411 F. Supp. 3d 446, 453 (S.D. Iowa 2019) (denying compassionate release motion without prejudice when defendant would not be eligible for release for years under the new law).  Even Saelua recognizes that, if he were sentenced today, "a proportionate sentence keyed to the 15-year mandatory minimum would be 18 years and 9 months (225 months)."  ECF No.

12

400, PageID # 1881 n.4.  While this court makes no ruling as to what an appropriate sentence would be under today's law, the court notes that Saelua has not served even half of what he is claiming he might be sentenced to (8 1/3 years of a potential 18 3/4-year sentence).  Saelua may, of course, file another motion for compassionate release when he gets closer to having served the newly reduced statutory mandatory minimum, taking good time credit into account.

This court recognizes that it has discretion under § 3582(c)(1)(A) to consider the changed law.  This court has previously held that a change in the law may be a relevant consideration in determining whether extraordinary and compelling circumstances justify a defendant's release, although this court has declined to rely on a statutory change as the sole consideration when Congress has not made the change retroactive.  *See United States v. Gouveia*, 2020 WL 6065299, at *6 (D. Haw. Oct. 14, 2020); *United States v. Lavatai*, 2020 WL 4275258, at *3 (D. Haw. July 24, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *4 (D. Haw. June 9, 2020).  This court also realizes that Saelua did not benefit from Amendment 782, which, several years ago, reduced guideline ranges for drug offenses.  In fact, at the time, the United States Attorney's Office lodged no opposition to an Amendment 782 reduction in Saelua's sentence, and it was this court that balked.  The court's hesitation was

13

not based on a personal determination that Saelua's sentence had to remain unchanged, but rather on this court's concern that a sentence reduction in the context of Amendment 782 would run afoul of the applicable statutory provision requiring application of Sentencing Commission policy statements. *See* ECF No. 303. In any event, the United States Attorney's Office ended up reversing its position and objecting to an Amendment 782 reduction. *See* ECF Nos. 329 and 331. Although a compassionate release reduction would not present the same issues, it appears premature.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence. Having considered the amount of time remaining on Saelua's sentence, his history, and the totality of the medical information he has submitted, this court determines that the reasons raised by Saelua do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence at this time.

### III.    CONCLUSION.

Saelua's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied. This denial is without prejudice to a future motion, although, of course, the court cannot predict whether any future motion will or will not be successful.

It is so ordered.

DATED: Honolulu, Hawaii, June 2, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Saelua*, Cr. No. 13-00021-SOM-03; ORDER DENYING WITHOUT PREJUDICE DEFENDANT LEVI SAELUA'S MOTION FOR COMPASSIONATE RELEASE